# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:22-CR-369-X |
| | § | |
| RAHEEL BHAI | § | |

---

## OBJECTION TO DEFENDANT RAHEEL BHAI'S PLEA AGREEMENT BY VICTIMS BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND BSP OF FINANCE, LLC

---

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau (admitted in the N.D. Tex.)
Illinois Bar No. 6332319
sdeau@vedderprice.com
**VEDDER PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

Lee B. Hart
Georgia Bar No. 502311
lee.hart@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
201 17th Street, Suite 1700
Atlanta, Georgia 30363
404.322.6349

**COUNSEL FOR VICTIMS BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND BSP OF FINANCE, LLC**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 2

II.     STATEMENT OF FACTS ................................................................................... 5

    A.      Bhai defrauded Benefit Street by inducing it to lend approximately $150 million based on false pretenses .................................................................. 5

    B.      Bhai and his parents fled to Sharjah and Pakistan to avoid criminal prosecution, civil suit, and repaying Benefit Street ................................. 7

    C.      Bhai and his parents returned to the United States, defrauding Benefit Street again while negotiating a plea that undermines the ends of justice............ 9

    D.      Bhai lied to the government in promising to repay $20 million under the Asset Preservation Agreement ............................................................. 11

    E.      Bhai and his parents are recidivists whose fraud mirrors past schemes ............. 11

III.    LEGAL AUTHORITY ...................................................................................... 14

IV.     ARGUMENT .................................................................................................... 17

    A.      Under Section 3553(a)(1), the Plea Agreement would result in an insufficient sentence given the nature and circumstances of the offense and Bhai's personal history and characteristics........................................................ 17

    B.      The Plea Agreement ignores essential Section 3553(a)(2) factors to be considered when imposing a sentence ................................................ 19

    C.      Under Section 3553(a)(7), the Plea Agreement presents an unreasonable and avoidable obstacle to Benefit Street's recovery of restitution ..................... 21

V.      CONCLUSION................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Dean*,
527 F.3d 391 (5th Cir. 2008) .................................................................15

*United States v. BP Prods. N. Am. Inc.*,
610 F. Supp. 2d 655 (S.D. Tex. 2009) ..........................................15, 16

*United States v. Crowell*,
60 F.3d 199 (5th Cir. 1996) ...................................................................15

*United States v. Faulkner*,
No. 3:18-cr-00500-B-1, ECF No. 32 (N.D. Tex. Apr. 2, 2019) ...........16

*United States v. Smith*,
417 F.3d 483 (5th Cir. 2005) .................................................................15

*In re Wild*,
994 F.3d 1244 (11th Cir. 2021) .............................................................14

**Statutes**

15 U.S.C. §§ 77q(a) and 77x...................................................................16

18 U.S.C.
§ 2 ..........................................................................................................16
§ 1343......................................................................................................2
§ 3553.................................................................................5, 16, 17, 22
§§ 3553, 3563, and 3572.......................................................................16
§ 3553(a) .................................................................................................1
§ 3553 (a)(1) .........................................................................................17
§ 3553 (a)(2) ...................................................................................17, 19
§§ 3553 (a)(2)(A)..................................................................................19
§§ 3553 (a)(2)(B)-(C) ...........................................................................19
§ 3553 (a)(7) ...................................................................................17, 21
§ 3663A...................................................................................................3
§ 3771.............................................................................................14, 15
§ 3771(d)(3) ....................................................................................14, 15
§ 3771 (e)(2)(A).....................................................................................15

**Other Authorities**

FED. R. CRIM. P. 11(c)(1) ...................................................................... *passim*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:22-CR-369-X |
| | § | |
| RAHEEL BHAI | § | |

**OBJECTION TO DEFENDANT RAHEEL BHAI'S PLEA AGREEMENT BY VICTIMS
BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND
BSP OF FINANCE, LLC**

TO THE HONORABLE BRANTLEY STARR:

Benefit Street Partners Realty Operating Partnership, L.P. and BSP OF Finance, LLC (collectively, "Benefit Street") are the sole victims of defendant Raheel Bhai's ("Bhai") admitted fraud, resulting in tens of millions of dollars of estimated losses. As such, Benefit Street has an undeniable interest in the equities and basic fairness in the outcome of this case, whether reached by plea agreement or through trial. Benefit Street files this objection in order to protect that interest.

The proposed plea agreement fails to comply with the sentencing purposes set forth in 18 U.S.C. § 3553(a), and it should be rejected for those reasons. First, if accepted by the Court, it would unjustifiably limit Bhai's potential term of incarceration to a period well below his anticipated Guidelines' range. As described below, there simply is no basis for the Court to provide that benefit to Bhai—a serial and unrepentant fraud artist and confidence man. Second, the severe damage inflicted on Benefit Street as his fraud victim is not appropriately accounted for under the terms of the agreement. Finally, the agreement fails to account for the ongoing and unrepentant nature of Bhai's conduct continuing to mislead Benefit Street, the government, and the Court; his overall offense conduct and personal characteristics, including his international flight to avoid this

prosecution; and his failure to pay millions of dollars in restitution—despite multiple promises and a signed agreement to do so—or to facilitate its payment by his unindicted co-conspirators, including his family members, in order to restore rather than revictimize his victims. Accordingly, Benefit Street objects to the plea agreement and asks that it be rejected by the Court because it does not adequately account for Bhai's systemic and ongoing frauds and actively disincentives Bhai from paying restitution for an economic crime.[1]

## I.    <u>INTRODUCTION</u>

On or about February 23, 2023, the government and Bhai entered into the plea agreement and related plea documents. *See generally*, ECF No. 49 ("Plea Agreement"). Under its terms and as charged in the accompanying Information (*see* ECF No. 47), Bhai pled guilty to a single count of wire fraud, in violation of 18 U.S.C. § 1343. ECF No. 49. Section 1343 provides for a period of imprisonment of up to 240 months.[2]

However, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the government and Bhai agreed to limit his potential imprisonment to no more than 120 months. *Id.* at 3. The agreement mandates the government's abstention from charging Bhai with other crimes relating to the offense conduct, including money laundering among others. Critically, the government charged Bhai's co-conspirator, Di Hao Zhang, with money laundering after converting assets Bhai obtained from Benefit Street into Bitcoin, and in doing so facilitating the Bhai family's escape to

---

[1] Under Federal Rule of Criminal Procedure 11(c)(1)(C), the Court can only accept or reject the plea, which caps Bhai's exposure at no more than 120 months. Benefit Street recognizes this is a substantial period of potential incarceration. However, this limitation is half (or less) of the statutory maximum for the offense of conviction and years below the anticipated United States Sentencing Commission Guidelines applicable to the offense conduct.
[2] If the fraud affected a financial institution, the statutory maximum imprisonment range increases to 360 months.

Pakistan and Sharjah, United Arab Emirates. *See United States of America v. Di Hao Zhang*, N.D. Tex., Case No. 3:22-CR-00369-X ("Zhang Case").[3]

Additionally, under paragraphs nine and ten of the Plea Agreement, Bhai agreed to specific financial reporting obligations and acknowledged the mandatory nature of restitution based on the count of conviction. ECF No. 49 at 4-5; *see also* 18 U.S.C. § 3663A.

Bhai also entered into an Asset Preservation Agreement with the government. *See* Asset Preservation and Liquidation Agreement dated March 14, 2023, ECF No. 60-1. This agreement obligated Bhai to pay $20 million in restitution within fourteen days, *i.e.,* by March 28, 2023. Bhai's commitment caused the government to abstain from pursuing "substantial nonexempt property" believed to be in Bhai's possession or under his control. *Id.* at ¶ 7. However, after initially turning over 212.846132 Bitcoin (valued at approximately $5.5 million), Bhai has failed to pay any other restitution, despite the above promise to both the Court and government and in express violation of the terms of the Asset Preservation Agreement.[4]

The Plea Agreement vitiates Bhai's incentive to pay any further restitution. Since the agreement is governed by Rule 11(c)(1)(C), Benefit Street—the only victim of the crime charged—cannot effectively exercise its voice at sentencing. Under a non-Rule (c)(1)(C) agreement, if Bhai were to continue his pattern of serial fraud, as he and his family continue to do, then Benefit Street could advocate for a sentence to the fullest extent of the law. However, that critical consideration—the victim impact statement—is stripped of its teeth, as Bhai's sentencing exposure is capped at ten years under the Plea Agreement.

---

[3] The government moved to dismiss its charges against Zhang, which was granted on April 6, 2023. *See* Zhang Case, ECF No. 67. It did not specify the basis for seeking dismissal.

[4] For their part, Bhai's parents, participants and unindicted co-conspirators in this fraud, seek to avoid civil liability through Ismail Bhai's recent second bankruptcy filing. *See In re Ismail Essa Bhai*, Case No. 23-30690, U.S. Bankruptcy Court for the Northern District of Texas ("Ismail Bankruptcy Case").

The favorable terms of the proposed Rule 11(c)(1)(C) Plea Agreement are unique, but even more so for an unrepentant con artist whose fraud is ongoing. The agreement, if accepted by the Court, would allow Bhai to: (1) limit his exposure to a single count of wire fraud and cap his potential term of imprisonment at 120 months, despite his realistic U.S.S.G. calculation being over thirteen or fourteen years; (2) receive credit for acceptance of responsibility, when he plainly has none; (3) protect his parents; and (4) avoid any significant consequences for failing to fully pay restitution.

Even more perplexing is the fact that all of these favorable terms were offered to Bhai *after* he and his parents fled to Sharjah and Pakistan to avoid criminal and civil prosecution.[5] The terms of the Plea Agreement were sufficient to lure Bhai back to the United States. However, on his return in March 2023, Bhai was not detained pending sentencing. Indeed, he is not in custody now, despite fleeing to a country without extradition until negotiation of his Plea Agreement. Further, even though Bhai's parents were apparent participants in his scheme, the agreement leaves them free to benefit from the proceeds of the fraud on Benefit Street. Bhai and his family should not benefit from a favorable plea agreement in the face of repeated and ongoing fraudulent conduct.

Benefit Street recognizes, values, and applauds the government's work in this case. It pursued justice in obtaining Bhai's conviction and anticipated incarceration. Benefit Street also values the government's efforts to comply with the Crime Victims' Rights Act ("CVRA"). However, the benefits conferred under the Plea Agreement, if accepted, effectively silence Benefit Street for the duration of the sentencing process. Further, Bhai would become disincentivized from further restitution for his economic crimes, despite representing to the government and Court that he would make future payment of $20 million in exchange for the concessions conferred on him.

---

[5] Sharjah, in the UAE, does not have an extradition treaty with the United States, while Pakistan effectively has none.

Bhai's ongoing criminal conduct supports a Guidelines' range well above the Plea Agreement's cap of 120 months. Because the agreement does not satisfy the composite sentencing purposes of 18 U.S.C. § 3553(a), Benefit Street objects to its acceptance and respectfully requests that it be rejected.

## II.    STATEMENT OF FACTS

The government and Bhai agreed to certain conduct as stipulated in the Factual Resume. *See* ECF No. 51. However, additional information is necessary to fully understand Bhai's multiple frauds.

### A.    Bhai defrauded Benefit Street by inducing it to lend approximately $150 million based on false pretenses.

On or about April 18, 2022, BSPRT CRE Finance, LLC ("CRE Finance") entered into a Loan Agreement ("Loan Agreement") in the amount of $149,700,000 to Bhai's entity, IBF Properties, LLC ("IBF"), reflected by two promissory notes executed on the same day ("Promissory Notes"). Also on April 18, 2022, Bhai executed and delivered to CRE Finance a Guaranty of Recourse Obligations ("Initial Guaranty"), individually guaranteeing repayment of all obligations of IBF to CRE Finance under the Loan Agreement and Promissory Notes.

As security for the Promissory Notes, Bhai caused IBF to execute and deliver to CRE Finance twenty-four (24) security instruments, each pertaining to real and personal property located in ten (10) different states to serve as collateral for the Loan ("Security Instruments"). The Security Instruments gave CRE Finance first-priority security interests and liens in and to IBF's real and personal property located in Alabama, Maryland, Wisconsin, Tennessee, North Carolina, Missouri, Mississippi, Michigan, Maryland, and Arkansas ("Collateral Property"). The Security Instruments were recorded in the respective real estate records in which each Collateral Property is located.

On April 28, 2022, CRE Finance advanced to IBF the amount of $149,700,000 pursuant to the Loan Agreement, Promissory Notes, and related documents ("Loan"). At the closing of the Loan, CRE Finance paid $112,533,891.35 to Revere Capital, $11,709,023.59 to AccessBank Texas, and $21,906,500.00 to EPI Commercial Finance, LLC ("EPI"), in accordance with payoff letters delivered by each and facilitated by Bhai and IBF, purportedly to pay off prior indebtedness of IBF. Through various assignments, the Loan Agreement, Promissory Notes, Initial Guaranty, Security Instruments and related documents have been transferred and assigned to, and are now held by, Benefit Street.

After closing the Loan, Bhai initiated negotiations for a second loan for IBF and other affiliates. During that process, Benefit Street identified certain irregularities in the documents submitted during due diligence. For example, the purported rents for various of the applicable properties were considerably, and in some cases, impossibly above market. Moreover, certain of the leases had obvious and unlikely typos on their face, including the insertion of the entire annual rent in place of the monthly rent, which would have dramatically increased the rent amount and been an unlikely mistake for the institutional tenants that Bhai and IBF claimed to have. When Benefit Street pressed Bhai about these irregularities, he either provided questionable answers or removed the questionable leases from the proposed property portfolio. Concerned about the veracity of the leases and related information associated with this potential second loan, Benefit Street revisited certain representations made in the diligence of the Loan.

Benefit Street contacted the seller of the Collateral Property to IBF (which was a transaction that Benefit Street was not involved with) and Walgreen's, the tenant of the Collateral Property. The sellers and Walgreen's corroborated Benefit Street's fears: Bhai and his co-conspirators forged and manipulated hundreds of documents, and IBF substantially overstated the

rent and lease terms of the Collateral Property in order to inflate their value, and did so by a factor of roughly 50% – 150%, depending on the property.

In the process of its investigation, Benefit Street discovered that EPI, an entity that was to be paid off at the closing of Benefit Street's Loan, was fictitious. As part of his sophisticated means to orchestrate this audacious crime, Bhai created EPI as a front company just eleven (11) days before the closing of the Loan for the sole purpose of effectuating the above-described fraud. This fiction was supported by a bogus statement that Bhai crafted to induce Benefit Street into "paying off" EPI. Ultimately, the effect of Bhai creating the fictitious EPI was that he received $21,906,500 of Loan proceeds from Benefit Street ("EPI Loan Proceeds"). Bhai then took the "payoff" money delivered to EPI and embezzled it for his own personal gain.

With this information, Benefit Street confronted Bhai. In response, he admitted to falsifying due diligence documents on behalf of IBF, which intentionally misrepresented the rent and lease terms. Bhai also acknowledged that he "screwed up,"[6] requested an opportunity to quickly repay the Loan, and shortly thereafter admitted to his fraud in writing. Benefit Street agreed to provide Bhai with this opportunity, but Bhai was required to make any repayments with funds obtained via legitimate, honest, and non-fraudulent means.

**B.    Bhai and his parents fled to Sharjah and Pakistan to avoid criminal prosecution, civil suit, and repaying Benefit Street.**

Despite promising to repay Benefit Street, Bhai and his parents proceeded to commit a string of lies and frauds upon Benefit Street after committing the principal fraud described above. These subsequent lies and deceptive schemes are continuing and have consequences even through

---

[6] This admission comes from a conversation between Bhai and a representative of Benefit Street, a transcript of which was turned over to the government.

the date hereof, hamstringing Benefit Street's actions to collect its fraud damages and the government's efforts to collect restitution. The subsequent lies and frauds began as follows.

On July 13, 2022, Bhai appeared at the law office of Benefit Street's counsel in Plano, Texas, together with his parents, Ismail Essa Bhai ("Ismail") and Rozmeen Essa Bhai ("Rozmeen"), and signed the following documents:

a)  Forbearance Agreement dated July 13, 2022, by and between Lender, Bhai, and IBF ("Forbearance Agreement") (*See* Exhibit 1);

b)  Amended and Restated Guaranty dated July 13, 2022, executed by Bhai in favor of Lender (the "Bhai New Guaranty") (*See* Exhibit 2);

c)  Guaranty dated July 13, 2022, executed by Ismail Essa Bhai in favor of Lender (the "Ismail Guaranty") (*See* Exhibit 3); and

d)  Guaranty dated July 13, 2022, executed by Rozmeen Essa Bhai in favor of Lender (the "Rozmeen Guaranty") (*See* Exhibit 4).

Under the Forbearance Agreement, Bhai and IBF agreed to the following:

In connection with the underwriting and diligence process prior to the closing of the Loan, [IBF] and Guarantor forged, falsified and submitted to Lender, with intent to deceive Lender, various documents, including, but not limited to, rent checks, purchase and sale agreements, closing statements, leases, and estoppel certificates (collectively, the "Lease Documents"), which materially overstated the rent and lease terms of the leases at the Property.

*See* Ex. 1, Forbearance Agreement, ¶ F, at 1.

To date, Benefit Street has not been paid in full despite the Forbearance Agreement, Bhai New Guaranty, Ismail Guaranty, and Rozmeen Guaranty. Instead, these documents kicked off the next stage of Bhai and his parents' fraudulent and deceitful efforts to stymie Benefit Street and the government's collections.

Shortly after executing the Forbearance Agreement and related guarantees, Bhai, Ismail, and Rozmeen made a hasty, albeit well-executed, flight to Sharjah and subsequently Pakistan. Before their abrupt departure, the Bhais shredded and discarded a large number of documents and

other items in the trash, pictures of which are attached hereto and have been previously provided to the government. *See* Exhibit 5, Photos of Bhai's Office. More importantly, however, is the fact that Bhai and his parents liquidated all of their financial accounts, transferred a large amount of money to cryptocurrency, and absconded with many millions of dollars to Sharjah and Pakistan. Bhai and his parents successfully evaded civil and criminal prosecution by fraudulently inducing Benefit Street to stand down from collections for a short, two-week period while they gathered their assets and fled.

### C.    Bhai and his parents returned to the United States, defrauding Benefit Street again while negotiating a plea that undermines the ends of justice.

After defrauding Benefit Street and fleeing the country with the stolen funds, Bhai and his parents decided they wanted to return to the United States. But they were not about to return under threat of open-ended prosecution or to repay anything more than the bare minimum in restitution. To orchestrate their return, Bhai and his parents relied again on their proven approach: they lied.

In December 2022, Bhai, from abroad, retained American counsel and contacted Benefit Street under the guise of negotiating to repay the Loan and return to the United States. These negotiations, however, were just a ruse for Bhai to distract Benefit Street while he negotiated a deal with the government. Moreover, he used the time to shield his former house from collections.

On February 9, 2023, counsel for Benefit Street and Bhai agreed that he would make a payment to Benefit Street of $20,000,000 on account of the damages of Bhai's fraud. This amount represented a highly negotiated and discounted figure, but Benefit Street believed it demonstrated a good-faith attempt to make restitution. Bhai's counsel represented to Benefit Street that Bhai would need time to liquidate and repatriate this money. At Bhai's insistence, Benefit Street agreed to adjourn its hearing to declassify the Bhai family's former Texas residence as their homestead until April 6, 2023. Benefit Street further agreed to inform the government of Bhai's efforts to

repay restitution. This agreement was memorialized in an email dated February 9, 2023 between civil and criminal counsel for Bhai, and counsel for Benefit Street ("February Agreement").[7]

Bhai never planned to perform on the February Agreement. First, Bhai's bankruptcy filing shows that Ismail Bhai completed his credit counseling course on February 8, 2023, *one* day before the February Agreement, and *two* days before the initial hearing to declassify his former home. *See* Ismail Bankruptcy Case, ECF No. 2. This demonstrates that, if Benefit Street had not agreed to adjourn the hearing upon Bhai's false promises, his father was prepared to file for bankruptcy anyway. Second, Bhai was contemporaneously negotiating the Plea Agreement with the government. With the executed Plea Agreement in hand, Bhai declined to acknowledge or adhere to his contractual obligations under the February Agreement and ignored daily follow-up correspondences from Benefit Street.

Not only did Bhai fraudulently induce the February Agreement, but he also used Benefit Street's agreement to adjourn the hearing to declassify Bhai's former house as a homestead against Benefit Street. After refusing to communicate with Benefit Street for weeks, late in the afternoon on April 5, 2023, less than 24 hours before the hearing, Bhai's counsel gave Benefit Street notice of the Ismail Bankruptcy Case. Because Ismail's name is on the title to the house, the automatic stay arising under 11 U.S.C. § 362 stayed the proceeding. Bhai—and his co-conspirator parents— again acted to stymie Benefit Street's recovery. Regardless of whether the house is truly a homestead, that inquiry will be further tied up in the Ismail Bankruptcy Case until the bankruptcy court issues a ruling.

In this way, Bhai, a criminal who has admitted to stealing $150 million from Benefit Street, perpetrated another fraud, this time *from abroad*, to obtain acceptable terms of the Plea Agreement

---

[7] A copy of the February Agreement is attached as Exhibit 6.

from the government while fraudulently inducing Benefit Street to delay collection actions under an agreement that Bhai clearly never intended to perform.

### D.    Bhai lied to the government in promising to repay $20 million under the Asset Preservation Agreement.

Pursuant to the Asset Preservation Agreement, the government, among other things, agreed to abstain from "filing writs of garnishment or writs of execution for substantial nonexempt property belonging or due to [Bhai]" in exchange for Bhai's agreement to pay $20 million in restitution to the government. Bhai's $20 million payment was composed of: (a) delivery of approximately 212.846132 Bitcoin in a hardware wallet, valued at approximately $5.5 million, and (b) payment of the balance of the restitution within 14 days after execution thereof. *See* Asset Preservation Agreement, ⁋ 7.

But Bhai defrauded the government, just like he defrauded Benefit Street. Bhai never paid the $20 million as agreed to under the Asset Preservation Agreement. While Bhai did turn over the Bitcoin, he failed to cover the balance of the $20 million. So, six weeks after Bhai was required to pay $20 million under the Asset Preservation Agreement, Bhai still owes the government approximately $14.5 million in restitution. Since neither the Asset Preservation Agreement nor the Plea Agreement provides any repercussions for failing to make the promised payments, Bhai and his family intend to continue to lie to the government and Benefit Street, without consequence.

### E.    Bhai and his parents are recidivists whose fraud mirrors past schemes.

As Benefit Street demonstrated through its investigations of the Bhais after discovering their initial scheme, the Bhais are serial fraudsters. The scheme outlined above is consistent with past frauds perpetrated by the Bhai family, who drew from a well-worn playbook.

In 2019, the Chapter 7 Trustee of the bankruptcy estate of Cesar Alcocer and Maria Antonia Alcocer sued Bhai and his parents for fraud. *See Seidel v. Bhai, et al. (In re Cesar Alcocer and*

*Maria Antonia Alcocer)*, Adv. Proc. No. 19-03104-sgj (Bankr. N.D. Tex. May 10, 2019).

Paragraph 8 of the Complaint alleges:

> Rozmeen Bhai, Ismail Bhai, and Raheel Bhai made numerous fraudulent misrepresentations to Mr. Alcocer, Mrs. Alcocer, Bebos, Inc., and Newtek Small Business Finance, LLC ("Newtek"). Rozmeen Bhai, Ismail Bhai, and Raheel Bhai's fraudulent misrepresentations included without limitation the following. Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the gross revenue that the Property generated by overstating the gross sales figures for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the profit that the Property generated by overstating the historical profit figures for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the profit that the convenience store generated by overstating the historical profit generated by the convenience store; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the expenses necessary to operate the Property by understating the historical expenses for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the present value of the Property by fraudulently overstating earnings and profit projections for the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the value of the furniture, fixtures, and equipment located at the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts that they had a legal duty to disclose regarding the true annual and monthly revenue generated by the Property; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the true annual and monthly expenses necessary to operate the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the true annual and monthly profit generated by the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding the condition of the Property that they had a legal duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently concealed and omitted material facts regarding hidden defects present at the Property that they had a duty to disclose; Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented that they would fix the roof of the property; and Rozmeen, Ismail, and Raheel Bhai fraudulently misrepresented the market and business conditions applicable to the Property.

In September 2022, Revere Credit Opportunities Fund III, LP ("Revere") filed two lawsuits against the Bhais in the District Court of Dallas County, Texas, both alleging fraud. In *Revere Credit Opportunities Fund III, LP v. Raheel Retail Properties, LLC*, *et al.*, Cause No. DC-22-11540 (Dist. Ct., Dallas County, Texas, September 2, 2023), the Petition alleges at paragraph 10:

> Defendants used a straw man transaction between J. Fund, IBF and Borrower, all entities owned and controlled by Bhai, to establish an inflated purchase price for

the Property (as that term is defined below). Additionally, Defendants fabricated documents including, but not limited to, the 7-11 Lease, the 7-11 Estoppel Certificate, and the 7-11 SNDA (as those terms are defined below), forged signatures on documents, and made numerous fraudulent representations regarding the status of the Property, the amount of rental income generated by the Property, the identity of the tenant for the Property and terms of the lone lease of the Property. Specifically, Defendants presented fabricated documents which indicated that the single tenant property was subject to a lease with a well-known national company for a remaining term of not less than 15 years and with minimum rent of $39,583.33 per month. The fabricated documents and affirmative misrepresentations by Defendants were relied upon by Revere in making a $6,750,000.00 loan to Borrower for Borrower's purchase the Property from J. Fund for $9,250,000.00. In reality, J. Fund is a straw man affiliated with Bhai and IBF, and the actual lease of the Property generates annual rental income of $35,000.00, a small fraction of the $39,583.33 in minimum monthly rent (annual rent of $475,000.00) as represented by Defendants.

In *Revere Credit Opportunities Fund III, LP v. Ismael Essa Bhai, et al.*, Cause No. DC-22-11542 (Dist. Ct., Dallas County, Texas, September 2, 2023), the Petition similarly alleges at paragraphs 11 and 12:

Defendants provided fabricated leases reflecting rents many times the actual rent being paid by the tenant under the bona fide leases, fabricated settlement statements from prior purchases reflecting inflated purchase prices, and other false information regarding the value of seven properties leased to Wal-Mart Stores Texas, LLC ("Wal-Mart") to induce Revere to make a loan secured by the subject properties. In reliance on Defendants' information, Revere made a $41,500,000.00 loan to Borrower ("Loan") guaranteed by R. Bhai.

Moreover, the Bhais are no stranger to bankruptcy proceedings. The Ismail Bankruptcy Case—the Chapter 7 case filed on the eve of hearing Benefit Street's action to strip the Bhais' former house of its homestead exemption—is the *second* Chapter 7 case that Ismail Bhai has filed. *See In re Ismail Essa Bhai*, Case No. 12-34277-bjh (Bankr. N.D. Tex. July 2, 2012). While Bhai's father filed for bankruptcy to further shield their former house, his mother has conspicuously *not* filed for bankruptcy—thereby avoiding judicial disclosure of assets in her possession.

The pleadings in these lawsuits establish a pattern and common theme: the Bhais consistently misrepresent and dupe creditors and business partners, to the tune of tens of millions

of dollars, through material false statements and false agreements. Further, the bankruptcy filings demonstrate the Bhais' apparent belief that they can simply sidestep further liability for their conduct and start fresh to defraud others in the future in the same way.[8]

Thankfully, Bhai has been caught and his prosecution is at hand. However, the only way to interrupt the Bhai family's pattern of fraudulent conduct is to levy a punishment that is sufficiently serious and incentivizes the repayment of ill-gotten funds. That is a fundamental goal of the criminal justice system, but that end is unachieved under the terms of the proposed Plea Agreement.

## III.    LEGAL AUTHORITY

Crime victims play an undesired but vital role in the criminal justice system. Various statutes and the Federal Rules of Criminal Procedure empower crime victims with a voice in the process. For instance, the CVRA guarantees crime victims certain rights in criminal proceedings. *See* 18 U.S.C. § 3771.[9] Under the CVRA, those rights include the "right to full and timely restitution as provided in law[;]" the right to timely notice of proceedings involving the release, plea, sentencing, or parole of the defendant; the right not to be excluded from and to be heard at any such proceeding; the right to confer with the government attorney in the case; the "right to be treated with fairness and respect for the victim's dignity and privacy." *Id.* at § 3771(a) (the CVRA includes numerous other rights). The CVRA also imposes duties on courts. "In any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim

---

[8] Benefit Street reserves all rights to object to the discharge of its debt and judgment and intends to pursue all such rights in the Ismail Bankruptcy Case as appropriate.
[9] While the CVRA does not create a private right of action, *In re Wild*, 994 F.3d 1244, 1256 (11th Cir. 2021), it does provide an avenue for relief "in the district court in which a defendant is being prosecuted for the crime…" *See* 18 U.S.C. § 3771(d)(3). Further, while the CVRA limits relief to a victim to make a motion to re-open a plea, a victim may assert its "right[s] to be heard before or during the proceeding at issue and such right was denied." *Id.* at (5)(A).

is afforded the rights described in subsection (a)." *Id.* at § 3771(b)(1). Also, a district court "shall take up and decide any motion asserting a victim's rights forthwith." *Id.* at § 3771(d)(3).

The CVRA defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense[.]" *Id.* at § 3771(e)(2)(A). Victims also are entitled to the right to confer with the government. *United States v. BP Prods. N. Am. Inc.*, 610 F. Supp. 2d 655, 727 (S.D. Tex. 2009). This includes the right to exchange information about the crime and for the concomitant right "to form and express their views to the government and court." *Id.* These rights must be vindicated "before a plea agreement is reached." *In re Dean*, 527 F.3d 391, 395 (5th Cir. 2008). With a victim's legal rights established, a court must consider the entry of a guilty plea within the requirements of Federal Rule of Criminal Procedure Rule 11.

It is well established that under Rule 11(c)(1), "the district court may accept or reject a plea agreement." *United States v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005); *see also United States v. Crowell*, 60 F.3d 199, 203 (5th Cir. 1996) (courts must "take an active role in evaluating a plea agreement, once it is disclosed"). Notably, "Rule 11 does not limit a district court's discretion in rejecting a plea agreement." *Smith*, 417 F.3d at 487. Rather, "[a] district court may properly reject a plea agreement based on the court's belief that the defendant would receive too light of a sentence." *Id.*; *see also Crowell*, 60 F.3d at 205-06 ("A court may properly reject a plea agreement based on undue leniency."). "Under the guidelines, a court is counseled to reject the plea agreement if it determines that accepting the plea agreement will undermine the statutory purposes of sentencing or the sentencing guidelines." *Smith*, 417 F.3d at 487. This analysis "may include a consideration of the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole." *Crowell*, 60 F.3d at 204.

A Rule 11(c)(1)(C) plea agreement allows the government and a defendant to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)." FED. R. CRIM. P. 11(c)(1)(C). However, it also empowers a district court judge to reject such an agreement, so long as the court, on the record and in open court:

> (A) inform[s] the parties that the court rejects the plea agreement; (B) advise[s] the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (C) advise[s] the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.

FED. R. CRIM. P. 11(c)(5).

In fact, a court in this district recently rejected a Rule 11(c)(1)(C) plea agreement. In *United States v. Faulkner*, a defendant pled guilty to a three-count indictment, including a count of securities fraud and aiding and abetting, in violation of 15 U.S.C. §§ 77q(a) and 77x and 18 U.S.C. § 2. *See* No. 3:18-cr-00500-B-1, ECF No. 32 (N.D. Tex., Apr. 2, 2019). The defendant initially pled guilty to an agreement under Rule 11(c)(1)(C) that capped his maximum sentence at 144 months for a nearly $71 million fraud. *Id.* at ECF Nos. 32, at 2 and 37, at 3. Judge Boyle rejected the plea agreement that capped the defendant's sentencing exposure at 144 months. *See id.* at ECF No. 54. Ultimately, the defendant pled guilty—not under a Rule 11(c)(1)(C) agreement—that exposed the defendant to a maximum of 15 years imprisonment. *Id.* at ECF No. 125, at p. 2. The defendant was sentenced to 180 months (15 years). *Id.* at ECF No. 153.

Moreover, a victim may object to a defendant's plea agreement. When a victim objects to a defendant's plea agreement, courts evaluate the terms of the plea agreement under 18 U.S.C. §§ 3553, 3563, and 3572. *See BP Prods. N. Am. Inc.*, 610 F. Supp. 2d at 727. "Section 3553 requires,

in relevant part, that in assessing the appropriateness of a sentence, a court must consider the history and characteristics of the defendant, the seriousness of the offense, whether the proposed sentence is an adequate deterrent to future criminal conduct, and whether the sentence protects the public." *Id.* Here, Bhai's Plea Agreement does not adequately satisfy these factors.

## IV.    ARGUMENT

The proposed Plea Agreement undermines the statutory purpose of sentencing and must be rejected for at least three reasons. First, the nature and circumstances of the offense, considered alongside Bhai's history and characteristics, do not support the terms of the agreement, which recommends a term of imprisonment that is merely half of the statutory limit, *see* 18 U.S.C. § 3553(a)(1), and fails to address Bhai and his parent's other crimes. Second, the Plea Agreement inadequately reflects the seriousness of the offense, inadequately deters criminal conduct, and does not protect the public from further crimes of the defendant, as it allows Bhai to serve a significantly reduced sentence, while permitting his parents to walk free and benefit from the fruits of Bhai's crimes. *See* 18 U.S.C. § 3553(a)(2). Third, the Plea Agreement strips Benefit Street of its voice at sentencing and incentivizes Bhai to continue to defraud Benefit Street and the government, which will result in avoidance of his restitution obligations. *See* 18 U.S.C. § 3553(a)(7). For these reasons, the Court should reject the agreement.

**A.    Under Section 3553(a)(1), the Plea Agreement would result in an insufficient sentence given the nature and circumstances of the offense and Bhai's personal history and characteristics.**

The nature and circumstances of Bhai's misconduct, along with his personal history and characteristics, do not support a significant departure from the sentencing guidelines, especially considering he is a recidivist who has continued to defraud Benefit Street and *the government* even after committing his initial fraud. Pursuant to 18 U.S.C. § 3553(a)(1), the Court shall consider "the

nature and circumstances of the offense and history and characteristics of the defendant" when calculating a "sufficient" sentence. This analysis includes an examination of Bhai's fraudulent conduct and the various attempts to evade any type of financial responsibility.

The overwhelming evidence reveals that Bhai constructed a sophisticated and elaborate fraud that resulted in substantial losses to Benefit Street. Less than two weeks before the Loan closed, Bhai formed EPI for the sole purpose of carrying out a fraudulent scheme. In order to secure this Loan, Bhai deliberately forged and falsified due diligence documents, significantly overstating the value of the Collateral Property. Indeed, Bhai admitted to Benefit Street that he "screwed up," seeming primarily concerned about avoiding public exposure related to his fraudulent conduct. But the relatively innocuous term "screw-up" belies the seriousness of Bhai's offense. Bhai's felonious conduct is, indeed, federal wire fraud and money laundering.

Notwithstanding Bhai's egregious actions, Benefit Street made a good-faith attempt to amicably resolve the dispute. In July 2022, Bhai entered into a Forbearance Agreement, in which he recognized that he "forged, falsified and submitted to Lender, with intent to deceive Lender, various documents" to secure the Loan. (*See* Ex. 1, Forbearance Agreement, ¶ F, at 1.) In addition, Bhai, Ismail, and Rozmeen all entered into three distinct guaranty agreements, guaranteeing the whole balance of the $150 million Loan. (*See* Exs. 2-4, Bhai New Guaranty, Ismail Guaranty, and Rozmeen Guaranty.) But these actions—the Forbearance Agreement, guaranties and "negotiations" that went with them—were merely a deceitful front erected by Bhai and his parents to buy time to escape the country and elude responsibility for the criminal and civil consequences of the fraud perpetrated on Benefit Street. Following the execution of the Forbearance Agreement and related guarantees, Bhai, Ismail, and Rozmeen secretly fled to Sharjah and Pakistan— countries where there is either no extradition treaty or a disputed extradition treaty.

Bhai's deceitful conduct has persisted even after his initial fraud—manifesting through his negotiations with Benefit Street and the government leading up to the Plea Agreement and Asset Preservation Agreement. Bhai fraudulently induced Benefit Street into adjourning the hearing on stripping his former house of its homestead designation with a false promise of a $20 million payment, which Bhai never intended to make. Indeed, late in the afternoon before the adjourned hearing, Bhai's father filed for bankruptcy, staying the action while having paid nothing to Benefit Street. Bhai also fraudulently induced the government to enter into the Asset Preservation Agreement upon the same promise of a $20 million payment. This allowed Bhai to reap the benefits of the government's agreement to abstain from collections efforts while paying just one quarter of the funds promised.

Bhai's repetitive fraudulent and deceitful conduct cannot be rewarded with a significant reduction of imprisonment time. Given the nature and circumstances of the offense, when considered alongside Bhai's history of fraud and characteristics, the Court should reject the Plea Agreement because it would result in an insufficient sentence that undermines the sentencing guidelines.

**B.    The Plea Agreement ignores essential Section 3553(a)(2) factors to be considered when imposing a sentence.**

In addition, the terms of the Plea Agreement fall woefully short of sufficiently securing a sentence that reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). The Plea Agreement also does not afford adequate deterrence to criminal conduct, nor does it protect the public from Bhai committing further criminal acts. *See* 18 U.S.C. § 3553(a)(2)(B)-(C).

Throughout the loan and attempted restitution process, and thereafter, Bhai has displayed an utter disregard for the law and no remorse for the seriousness of his misconduct. Bhai's actions

speak louder than his words. Bhai's actions demonstrate that he does not respect the law, has no remorse, does not accept responsibility, and has no qualms about continuing to defraud all those in his path, be it Benefit Street, future creditors, or the government.

Immediately after negotiating a Forbearance Agreement, Bhai converted his ill-gotten gains into cryptocurrency, fled the country, and ceased all payments to Benefit Street. He later rekindled communications with Benefit Street, only to defraud it again and cease communications while lying to the government along the way. The terms of this Plea Agreement not only fail to deter analogous conduct, but it communicates to similarly situated defendants that such conduct will not only be tolerated, but rewarded. Indeed, the government negotiated with Bhai while he hid in a foreign country with no extradition treaty with the United States. Then, Bhai defrauded the government by breaching the Asset Preservation Agreement.

It is evident that Bhai simply does not respect the law, nor would he be deterred from committing future crimes. Bhai's fraudulent inducement of Benefit Street to enter into the February Agreement and subsequent inducement of the government to enter into the Asset Preservation Agreement underscores Bhai's belief that he is above the law and will not hesitate to continue defrauding the public. A term of imprisonment that cuts the statutory maximum by 50% and disincentivizes restitution will not adequately deter Bhai, or other similarly situated defendants, from committing comparable misconduct in the future.

Moreover, the Information charges one count of wire fraud. However, Bhai's criminal acts exceed one count of Wire Fraud, and include, amongst other crimes, money laundering. If Bhai had been charged with the full gamut of his criminal conduct, his Sentencing Guideline range would far exceed ten years. Further, his relevant conduct, as more fully described in this Objection,

cannot be fully considered by the Court at sentencing because of the nature of a Rule 11(C)(1)(c) plea. Therefore, the Court should reject the Plea Agreement.

**C.  Under Section 3553(a)(7), the Plea Agreement presents an unreasonable and avoidable obstacle to Benefit Street's recovery of restitution.**

Finally, the Court should reject the Plea Agreement because it disincentivizes Bhai to pay further restitution. Under Section 3553(a)(7), a proper sentence should consider "the need to provide restitution to any victims of the offense." *See* 18 U.S.C. § 3553(a)(7). The Plea Agreement requires no payment of restitution and indeed creates a hurdle to any monetary recovery. That is because Benefit Street is silenced as a result of the Rule 11(c)(1)(C) plea. Since Bhai's sentence is capped at ten years, Benefit Street cannot advocate for a sentence commensurate with his cooperation and efforts—or lack thereof—towards restitution. Therefore, the Plea Agreement removes the incentive for Bhai to pay restitution and he continues to exploit that fact by entering into fraudulent agreements.

Benefit Street spent months investigating the finances of Bhai and his parents, and any material funds at any financial institutions at which Bhai and his parents held assets are well-hidden or dissipated. Benefit Street has completed its foreclosure of its collateral properties. To Benefit Street's current knowledge, the Bhais' only unencumbered real estate asset is their former Texas residence, which Benefit Street was fraudulently induced to adjourn its action against, while Bhai's father filed for bankruptcy late in the afternoon before the continued hearing to stay the action.

Notwithstanding Bhai's material breach of the February Agreement, the government entered into the Asset Preservation Agreement with Bhai, which itself required payment of $20 million to the government. Bhai breached that agreement, too. And the Asset Preservation Agreement itself provides absolutely no consequences for Bhai's failure to pay the full $20 million,

despite the government's knowledge of Bhai's propensity to lie, defraud, and breach promises. Under the Plea Agreement's current structure, Bhai and his parents have no incentive to pay any additional funds in restitution.

Moreover, the Plea Agreement will also increase the burden and associated costs for Benefit Street to obtain restitution. Benefit Street's only leverage is the threat of exercising its voice as a victim to advocate for maximum prison time if Bhai and his family did not make good faith efforts to make restitution, advocating for the prosecution of his parents, and disposition of his former residence. The Plea Agreement completely strips Benefit Street of its opportunity to advocate for or against Bhai. Bhai understands this and is taunting both Benefit Street and the government by breaching the Asset Preservation Agreement, knowing there is nothing either party can do about it. Benefit Street's last hope is that the Court rejects the Rule 11(c)(1)(C) plea.

## V.    <u>CONCLUSION</u>

The Section 3553 factors unequivocally depict a Plea Agreement that is insufficient in light of Bhai's continued and repeated fraudulent conduct. Throughout the course of Bhai's deceitful scheme, he has actively sought to escape liability, fled the country to avoid civil and criminal consequences, defrauded Benefit Street *again* in an effort to keep his former home absent any meaningful monetary restitution, and lied to the government in an effort to avoid collections measures.

If the Plea Agreement is approved, Bhai benefits from a maximum sentence he finds acceptable without paying what he repeatedly promised, in writing, to Benefit Street and the government. Bhai's parents walk free and avail themselves of a fresh start afforded to them by the Bankruptcy Code and whatever pilfered assets from Bhai's fraud that are hidden with Bhai's

mother. At the end, the Bhai family will recommence their established pattern of defrauding business partners until they are caught again, leaving more victims in their wake.

This Plea Agreement does not deter Bhai and other similarly situated defendants who fail to take responsibility for their conduct. Rather, the message to other parties is that frauds—even ongoing and accompanied by lies to the government—can be rewarded with an advantageous plea deal. Therefore, Benefit Street respectfully requests that the Court reject the Plea Agreement.

Respectfully submitted,

By: */s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau (admitted in the N.D. Tex.)
Illinois Bar No. 6332319
sdeau@vedderprice.com
**VEDDER PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

and

Lee B. Hart
Georgia Bar No. 502311
lee.hart@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
201 17th Street, Suite 1700
Atlanta, Georgia 30363
404.322.6349

**COUNSEL FOR VICTIMS**
**BENEFIT STREET PARTNERS**
**REALTY OPERATING PARTNERSHIP, L.P.**
**AND BSP OF FINANCE, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 10, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that a true copy of the foregoing was furnished by CM/ECF to all counsel of record.

<i>/s/ Jeff Ansley</i>
Jeffrey J. Ansley