IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:22-CR-369-X |
| | § | |
| RAHEEL BHAI | § | |

**SUPPLEMENTAL OBJECTION TO DEFENDANT RAHEEL BHAI'S PLEA AGREEMENT BY VICTIMS BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND BSP OF FINANCE, LLC**

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com
**VEDDER PRICE, P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

Lee B. Hart
Georgia Bar No. 502311
lee.hart@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
201 17th Street, Suite 1700
Atlanta, Georgia 30363
404.322.6349

**COUNSEL FOR VICTIM BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P.**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................ 2
II. STATEMENT OF FACTS .......................................................................................... 3
    A. Events Leading to the Bankruptcy Case ............................................... 3
    B. Ismail Dishonestly Files Bankruptcy ..................................................... 5
    C. Bhai Obstructs Benefit Street's Discovery in the Adversary Proceeding.............. 6
    D. Evidence Marshaled by Benefit Street ................................................... 8
        1. Pre-Benefit Street Fraud ............................................................. 8
        2. Concealed and Missing Assets.................................................. 10
        3. Transfers of Assets.................................................................... 12
III. ARGUMENT............................................................................................................ 13
IV. CONCLUSION......................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Ismail Essa Bhai*,
  Case No. 23-30690-sgj (Bankr. N.D. Tex.) ...........................................................................1, 5

*Revere Credit Opportunities Fund III, L.P., v. Riba Wal-Mart Investment, LLC, et al.*,
  Cause No. DC-22-11542 (D. Ct. Dallas Cty. Sept. 2, 2022) .......................................................9

**Statutes**

18 U.S.C. § 1343............................................................................................................................2

18 U.S.C. § 3553(a) ..............................................................................................2, 3, 13, 15, 16

Bankruptcy Code Section 362, 11 U.S.C. §§ 101, *et seq.* ............................................................5

**Other Authorities**

U.S. Const. amend. V................................................................................................ *passim*

Fed. R. Crim. P. 11(c)(1)(C) ..........................................................................................................2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 3:22-CR-369-X |
| | § | |
| RAHEEL BHAI | § | |

**SUPPLEMENTAL OBJECTION TO DEFENDANT RAHEEL BHAI'S PLEA AGREEMENT BY VICTIMS BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND BSP OF FINANCE, LLC**

TO THE HONORABLE BRANTLEY STARR:

Benefit Street Partners Realty Operating Partnership, L.P. and BSP OF Finance, LLC (collectively, "Benefit Street")—the victim of defendant Raheel Bhai's ("Bhai") admitted crimes—provides the following additional information and argument (the "Supplement") in support of its objection to Bhai's plea agreement (the "Plea Agreement"). *See* ECF No. 74 ("Objection").

*First,* through extensive investigation, discovery, and litigation in connection with the bankruptcy case (the "Bankruptcy Case") filed by Bhai's father, Ismail Bhai ("Ismail"), Benefit Street has uncovered additional information about Bhai's history of fraudulent conduct. This evidence highlights the dramatic extent of Bhai's crimes and the insufficiency of the maximum sentence under the Plea Agreement, which is less than that provided under the Sentencing Guidelines. Simply put, Bhai has made defrauding individuals, lenders, and taxpayers his life's work.

*Second*, the conduct of Bhai, Ismail, and Bhai's mother Rozmeen Bhai ("Rozmeen") during the Bankruptcy Case has demonstrated utter contempt for judicial authority and Bhai's serial lack of remorse. In addition to Ismail's rampant bankruptcy fraud, at every opportunity, the Bhai family acted intentionally, deceitfully, and in purposeful coordination to hinder Benefit Street's investigation and frustrate its efforts to recover its defrauded funds. This patten of manipulating the judicial system includes resisting discovery and depositions, feigning medical emergencies, and abusing the Fifth Amendment privilege to protect Bhai's family's secreted stolen wealth—only to withdraw this wrongfully-asserted privilege after protracted and expensive discovery disputes. All of this behavior is inconsistent with acceptance of responsibility, remorse, or cooperation with the government's efforts to recover what Bhai has stolen.

Benefit Street files this Supplement to inform the Court of these matters. Much of this information has been provided to Bhai's Probation Officer for consideration in preparation of the Presentence Investigation Report. The purpose of this Supplement is to augment the information previously provided, particularly with respect to late-breaking developments in the Bankruptcy Case. Nothing in this Supplement will come as a surprise to Bhai, as the same information was presented directly to him in his February 2024 deposition in the Bankruptcy Case.

The Plea Agreement does not adequately account for Bhai's incorrigibility, evidenced by his systemic and ongoing fraudulent conduct. Specifically, under 18 U.S.C. § 3553(a), the Plea Agreement does not fully account for his ongoing misconduct and should be rejected.

## I.   INTRODUCTION

Bhai and the government entered into the Plea Agreement on or about February 23, 2023, resulting in his guilty plea to a single count of wire fraud in violation of 18 U.S.C. § 1343. *See*

*generally*, ECF No. 49. Bhai negotiated the Plea Agreement from abroad, after fleeing to Pakistan in the wake of the conduct underlying his guilty plea. Although the maximum term of imprisonment under Section 1343 is 240 months, the Rule 11(c)(1)(C) plea limits Bhai's prison exposure to 120 months. *Id.* In exchange, the government agreed not to charge Bhai with other crimes related to his offense including, but not limited to, money laundering. *See* Objection at 2.

As set forth in the Objection, on or about March 14, 2023, Bhai also entered into an Asset Preservation Agreement (the "Asset Preservation Agreement") with the government under which he agreed to pay $20 million in restitution within fourteen days. Bhai turned over Bitcoin worth approximately $5.5 million—comprised entirely, as discussed below, of funds fraudulently obtained from Benefit Street. Since then, Bhai has breached the Asset Preservation Agreement by refusing to pay any additional payments.

Bhai has engaged in a years-long pattern of fraud. Along the way, he has accumulated substantial financial and tangible assets for which he and his family have refused to account. Further, Bhai has transferred millions of dollars to conceal and secrete them from Benefit Street and other creditors. Further, rather than cooperating with Benefit Street's investigation in connection with the Bankruptcy Case or paying the $20 million he promised to pay under the Asset Preservation Agreement, Bhai chose a path of obstructionism, including being held in civil contempt by the bankruptcy court for refusing to meet his basic legal obligations. Bhai's conduct, during and after his admitted fraud, shows that the existing Plea Agreement is insufficient to provide for a sentence that is sufficient, but no greater than necessary, under the combined 18 U.S.C. § 3553(a) factors. The Court should reject it.

## II. STATEMENT OF FACTS

### A. Events Leading to the Bankruptcy Case.

Bhai's admitted criminal conduct was extensive and is detailed fully in the Objection, which is incorporated by reference. Summarized briefly, in April 2022, Bhai arranged for a company he and his family controlled, IBF Properties, LLC, to obtain an approximately $150 million loan (the "Loan") from a Benefit Street affiliate. The stated purpose for the Loan was the refinancing of a portfolio of commercial properties, with Walgreens stores as existing tenants. As Bhai has admitted, he doctored leases, estoppels, rent checks, bank statements and other documents to inflate the value of the Loan collateral. Evidence adduced in litigation connected with the Bankruptcy Case suggests that Ismail and Rozmeen were also knowing, willing participants in the fraud.

The next stage of the fraud involved the Bhais' misappropriation of the Loan proceeds. To facilitate this, the family created a fictional lender, EPI Commercial Finance, LLC ("EPI"), just days before Loan closing. Using a falsified payoff letter, EPI obtained almost $22 million of the Loan proceeds at closing. *See* App'x at 1, 5, 11. Within days of closing, the Bhais transferred that $22 million from EPI's Bank of America account XXXXXX9139 to Bank of America account XXXXXX3537, held jointly by Bhai, Ismail, and Rozmeen. *See id.* at 11, 737. Beginning on April 22, 2022, through the time the Bhais left the country (discussed below), they transferred more than $10 million to third parties, in many cases for no apparent reason other than for personal use. In addition, through a series of inter-account transactions, the Bhais flushed at least another $4.6 million through various jointly-held Goldman Sachs accounts back to the *3537 account. *See id.* at 16, 732.

Bhai approached Benefit Street for a second, larger loan in or about June 2022. Inconsistencies in Bhai's due diligence disclosures for the new loan caused Benefit Street to question Bhai's overall disclosures, uncovering the instant fraud causing the Loan. Benefit Street confronted Bhai, who was forced to admit his guilt. To induce Benefit Street to not immediately exercise its remedies, Bhai made an approximately $5 million paydown of the Loan and signed, with his parents, full personal guaranties of the entirety of the $149,700,000 Loan. *See id.* at 21, 34, 48, 62.

But the Bhais' forbearance agreement was another deception. They used the time bought under the agreement to fraudulently transfer and secrete their ill-gotten assets, including by converting almost $5 million into Bitcoin. Once that was done, the Bhais fled the United States—with the Bitcoin downloaded to a "cold wallet" and, on information and belief, valuable jewelry and gold. They traveled first to Sharjah, then to Pakistan, with no plans to return. While they were away, Benefit Street sued them in state court and obtained an approximately $160 million judgment. The Bhais remained in Pakistan for about eight months—only returning after Bhai had negotiated the Plea Agreement and Ismail had made plans to file bankruptcy in an ill-advised attempt to escape his own obligations to Benefit Street and other creditors.

### B. **Ismail Dishonestly Files Bankruptcy**.

Neither Ismail nor Rozmeen has made any attempt to satisfy their obligations to Benefit Street since the family's return to the United States. Instead, with Bhai's assistance, they routinely have attempted to thwart Benefit Street's lawful efforts to exercise its rights and collect its judgment. These efforts began on April 5, 2023 (the "Petition Date"), the day before a state court hearing on Benefit Street's motion to strip the Bhais' residence of its homestead

exemption. Rather than contest the hearing, Ismail filed a chapter 7 bankruptcy case[1] (the "Bankruptcy Case"), invoking the automatic stay under Section 362 of the Bankruptcy Code.[2]

The Bhais' pattern of dishonesty extended to the Bankruptcy Case. Ismail filed his bankruptcy schedules (collectively, and inclusive of subsequent amendments, the "Bankruptcy Schedules") and statement of financial affairs (the "Statement of Financial Affairs") on April 19, 2023. They are replete with misstatements and omissions about, among other things, Ismail's assets, transfers of funds, and interest and participation in the family's various pre-bankruptcy businesses. Ismail perpetuated these falsehoods through his testimony under oath at his meeting of creditors conducted under Section 362 of the Bankruptcy Code.

Ismail's fraud and misconduct led Benefit Street to file an adversary proceeding (the "Adversary Proceeding"), objecting to the dischargeability of its debt because it was procured by fraud. Benefit Street further objected to Ismail's general bankruptcy discharge based on his: (1) prepetition fraudulent transfers of assets; (2) failure to maintain adequate records; (3) pervasive, numerous false oaths in the Bankruptcy Case; and (4) failure to explain the loss of substantial pre-bankruptcy assets. *See* App'x at 76. After extensive litigation, on July 10, 2024, Ismail filed a motion to waive his discharge rather than proceed to trial, which was scheduled to begin in five days.

C.   **Bhai Obstructs Benefit Street's Discovery in the Adversary Proceeding.**

Discovery from Bhai and his family was critical to Benefit Street's efforts to prosecute the Adversary Proceeding and investigate Ismail's affairs. But the family as a whole, and Bhai individually, intentionally conspired to thwart Benefit Street's efforts, in derogation of both their basic legal duties (and, in Ismail's case, his duties as a debtor under the Bankruptcy Code) and

---

[1] *In re Ismail Essa Bhai*, Case No. 23-30690-sgj (Bankr. N.D. Tex.).
[2] 11 U.S.C. §§ 101, *et seq.*

good faith. Among other things, Bhai refused to attend his scheduled deposition, feigning illness, and when compelled to attend a rescheduled deposition asserted his Fifth Amendment rights approximately 500 times, including over many topics unrelated to him and not conceivably self-incriminating. *See generally* App'x at 62–75.

Ultimately, Benefit Street was forced, at great time and expense, to seek the Bankruptcy Court's intervention to obtain even a modicum of cooperation from any of the Bhais:

- Benefit Street served a subpoena for documents on Bhai in the Adversary Proceeding on August 7, 2023. Bhai, through his then-counsel Aamer Ravji, Esq., served responses and objections to this subpoena on August 23, 2023, claiming a blanket Fifth Amendment privilege over every category of documents sought by Benefit Street. Benefit Street was forced to file a *Motion to Compel Compliance with Subpoenas to Nonparties Raheel Bhai and Rozmeen Bhai* [Adv. Proc. ECF No. 19] (the "Bhai Motion to Compel"). *See* App'x at 129. In Bhai's response to the Motion to Compel, Ravji informed Benefit Street and the Court that he no longer represented Bhai, and in fact that his representation, puzzlingly, had ended *before* Mr. Ravji signed and served Bhai's responses and objections. On the eve of hearing on the Bhai Motion to Compel, new counsel appeared for Bhai in the Adversary Proceeding. Ultimately, but not until after multiple hearings over several months, Bhai withdrew his Fifth Amendment objections. On January 10, 2024, the Bankruptcy Court granted the Bhai Motion to Compel, holding Bhai and Rozmeen in civil contempt and ordering them jointly and severally to pay $42,065.43, representing Benefit Street's fees and expenses, and setting a show cause hearing. *See id.* at 132.

- Also on January 10, 2024, the Bankruptcy Court entered an order [Adv. Proc. ECF No. 66] granting Benefit Street's *Motion to Compel Production of Documents from Defendant* [Adv. Proc. ECF No. 38], compelling Ismail to respond fully to Benefit Street's outstanding requests for production, ordering Ismail to pay Benefit Street's expenses, including attorney's fees, incurred in connection with the motion (totaling $39,071.85, which amount remains unpaid), and requiring Ismail to sit for a deposition on January 19, 2024. *See* App'x at 136.

- On February 14, 2024—after both Bhai and Rozmeen failed to attend their scheduled depositions—the Court entered an *Order on February 12, 2024, Hearing on Order to Show Cause* [Adv. Proc. ECF No. 93], ordering Bhai and Rozmeen to produce all documents responsive to its subpoenas, again ordering Bhai and Rozmeen to appear and be deposed on certain dates, and providing that further noncompliance could result in the issuance of bench warrants for civil contempt. *See* App'x at 139.

**SUPPLEMENTAL OBJECTION TO DEFENDANT RAHEEL BHAI'S PLEA AGREEMENT BY VICTIMS BENEFIT STREET PARTNERS REALTY OPERATING PARTNERSHIP, L.P. AND BSP OF FINANCE, LLC – PAGE 7**

Augmenting the Bhai family's contumacious behavior described above, throughout the Bankruptcy Case and Adversary Proceeding they used their legal representation to foment confusion and delay. At the outset of the Bankruptcy Case and Adversary Proceeding, Ismail was represented by Weldon Moore and Bhai and Rozmeen were represented by Mr. Ravji. As described above, shortly before hearing on the Bhai Motion to Compel, Mr. Ravji was purportedly terminated by Bhai and Rozmeen, who then hired Jeff Tillotson and Enrique Ramirez. On December 6, 2023, Ismail terminated Mr. Moore and, about a month later, hired Joyce Lindauer.[3] Finally, after refusing to attend their scheduled depositions on January 30 and 31, 2024, Messrs. Tillotson and Ramirez withdrew their representation of Bhai and Rozmeen on February 12, 2024. Each time any of the Bhais changed counsel, they did so with little or no advance notice to Benefit Street and on the eve of a deadline or hearing, in an obvious concerted effort to create chaos in the bankruptcy litigation.

D.     **Evidence Marshaled by Benefit Street**.

Despite the Bhais' obstructionism, Benefit Street was able, largely through third-party discovery, to obtain extensive evidence of Bhai and his family's long pattern of misconduct.

1.     **Pre-Benefit Street Fraud**

Bhai and his family engaged in extensive fraudulent activities before perpetrating their scheme against Benefit Street. Bhai conducted fraudulent activities through a number of entities he owned and controlled, along with Ismail and Rozmeen, including:

- IBA Properties, LLC
- IBF Energy
- IBF Group of Companies LLC
- IBF Holdings

---

[3] Ms. Lindauer, shortly after filing Ismail's motion to waive discharge, also moved to withdraw from representing Ismail.

- IBF Hospitality
- Ismail Retail Properties, LLC
- RA Capital Addison, LLC
- Raheel Retail Properties LLC
- RB Hospitality, LLC
- RIBA Hospitality Fund 1 LLC
- RIBA Holdings LLC
- RIBA Walmart Investment LLC
- UPHPMF LLC

Individually and through these entities, the Bhais had no qualms about defrauding individuals, lenders, and the United States:

- On May 10, 2019, the bankruptcy trustee in a case filed by individuals Cesar and Maria Alcocer sued Bhai, Ismail, and Rozmeen for defrauding the Alcocers, alleging, among other things, that they induced the Alcocers into purchasing a gas station through fraudulent misrepresentations about the property's income, expenses, and other information material to the property and its financial condition. The trustee sought at least $1.2 million in damages, which the Bhais settled for $575,000 under a sealed settlement agreement which Benefit Street obtained Bankruptcy Court approval to unseal. *See* App'x at 142, 150.

- Bhai fraudulently obtained a Paycheck Protection Program ("PPP") loan from AccessBank for approximately $1.1 million as a "sole proprietorship." To obtain this PPP loan, Bhai fraudulently submitted at least one loan application in his name (doing business as "IBF Energy"), representing that he had 40 employees with monthly payroll expenses of $214,283. These representations were false and, as described below, Bhai is believed to have used the PPP loan proceeds for his and his family's personal benefit. Upon information and belief, Bhai's PPP loan or loans were forgiven at the expense of the American taxpayer. *See* App'x at 157, 161.

- Another secured lender, Revere, sued the Bhais for perpetrating a fraud similar to the one committed against Benefit Street. *See Revere Credit Opportunities Fund III, L.P., v. Riba Wal-Mart Investment, LLC, et al.*, Cause No. DC-22-11542 (D. Ct. Dallas Cty. Sept. 2, 2022). Revere's successor-in-interest filed a proof of claim in Ismail's bankruptcy case for at least $111,851,099.04. *See* App'x at 169.

The evidence also shows that Bhai intended to defraud potential investors. Benefit Street uncovered an archived website for "IBF Hospitality," also referencing "IBF Holdings" and the

"IBF Group of Companies." It describes Bhai as "Chairman, CEO and Co-founder of IBF Group of Companies," lists Ismail and Rozmeen as co-founders and senior executives, and is replete with fanciful statements about the putative business's extensive assets. *See id.* at 215.

Similarly, Benefit Street obtained a 121-page slide deck for "IBF Holdings, A Family Office Based in Dallas, Texas." These investor presentation materials claim, among other things, that the company was involved in the financial services, real estate, industrial, retail, and insurance sectors and had $11 billion in assets under management. Similar to the website, it lists Bhai as "owner & CEO." The last 75 pages of the deck consist of a list of thousands of commercial real estate properties allegedly owned by the Bhais that appear nowhere in the bankruptcy proceedings, and therefore are almost certainly materially false statements.

Bhai is believed to have created or is responsible for creation of the website and slide deck, both of which were part of Bhai's efforts to solicit investors for his family's criminal enterprises. Taken together, these facts establish that Bhai's entire livelihood consists of moving from one fraudulent scheme to the next, without regard for whether his victims are institutions, individuals, or the public. Bhai was, effectively, acting like a living Ponzi scheme, using each subsequent fraud to grow and pay down his previous frauds.

### 2. Concealed and Missing Assets

Bhai used the proceeds of his fraudulent activities to fund an extravagant lifestyle for himself and his parents. To be sure, the family attempted to maintain outwardly modest appearances, living together in Ismail's unassuming house in Carrollton. But Benefit Street learned through discovery that Bhai accumulated millions of dollars in jewelry, vehicles, and cash, which have largely been concealed and practically none of which has been used to reimburse Benefit Street or pay the government under the Asset Protection Agreement.

First, receipts produced in discovery by Govindji's, a Dallas-area jeweler, show that between February 2017 and June 2022 (after Bhai's fraud against Benefit Street), Bhai purchased more than $1.25 million in valuable gold and gemstones, including a $284,800.00 pair of diamond earrings, an approximately $150,000.00 diamond ring, a $51,805.00 diamond necklace, and more than 100 22-karat gold bangles and other items. *See* App'x at 219. Bhai paid for the jewelry with checks drawn against Guaranty Bank and AccessBank accounts. *See id.* at 219. None of this jewelry has been accounted for. When deposed in the Adversary Proceeding, Ismail and Rozmeen each implausibly denied any awareness of the jewelry. Consistent with his pattern of evasiveness, Bhai asserted his Fifth Amendment rights. *See id.* at 80.

Bhai and his parents also drove several luxury vehicles, including Audi and Mercedes-Benz sedans, a Range Rover, and a Bentley Bentayga. Bhai purchased the Bentley and Range Rover at the same time, on December 23, 2021, with a check for $382,388.55 drawn on an AccessBank account. App'x at 359. Benefit Street understands that the FBI seized the Range Rover after the Bhais fled the country. The whereabouts or disposition of the Bentley are unknown. The Bhais' appetite for luxury cars remains: records show that after returning to the United States to surrender their son to the authorities and just prior to filing Ismail's Bankruptcy Case, they purchased an Audi A8—driving in luxury while "bankrupt" and in the face of millions of dollars lost by Benefit Street and their other fraud victims.

Bhai and his family also generated substantial income and amassed financial assets generated by their fraudulent business operations. Among the documents Bhai eventually produced (only after being compelled to do so) were certain of his own tax returns, reflecting the following total income:

| Tax Year | Total Income |
|---|---|
| 2017 | $ 6,525,770 |
| 2018 | $ 7,150,002 |
| 2019 | $ 8,264,828 |

Ismail and Rozmeen's tax returns for the same years (also produced by Bhai) also showed millions of dollars in income. *See generally* App'x at 403–506.

Third-party discovery in the Adversary Proceeding showed that not only did Bhai use the proceeds of his fraud to purchase luxury cars and jewelry, but also dissipated it among multiple financial accounts that were generally jointly owned by himself, Ismail and Rozmeen, including multiple Goldman Sachs accounts. A March 8, 2021, form completed and signed by Raheel, Ismail, and Rozmeen and given to Goldman Sachs listed estimated annual income of approximately $6.2 million, total assets of $450 million, and net worth of $276,700,000. *See* App'x at 507. In June 2022, there were millions on deposit in the Goldman accounts. *Id.* at 513. Bhai and his family also jointly held, among others, JPMorgan Chase Private Client Checking and Savings accounts, and a Guaranty Bank account. As of November 22, 2021, the JPMorgan checking account had a balance of $10,595,983.20 and the JPMorgan savings account had a balance of $9,830,129.00. *Id.* at 727-28. As of August 6, 2021, the Guaranty Bank account (titled "BHAI RAHEEL ROZMEEN & ISMAIL IMA") had a $5 million value. *Id.* at 729.

  3. **Transfers of Assets**

After defrauding Benefit Street, Bhai acted quickly to dissipate his fraudulently-obtained proceeds. Between April 19, 2022—the day after the Loan closing—and July 1, 2022, Bhai and his family made 29 transfers out of the Bank of America *3537 account, totaling more than $11 million, to 19 recipients, including individuals, financial institutions, and a charter jet company.

*See* App'x at 737–62.  The source of these transfers were the funds siphoned from the Loan using the fictional lender EPI.  While neither Bhai nor his parents have been forthcoming about the purpose for any of these transfers, none appear to have been for made for any purpose other than to dissipate the Loan proceeds or to directly benefit Bhai, in either case at Benefit Street's expense.

And as the Bhais prepared to flee the United States, they arranged to convert a sizable portion of the remaining Loan proceeds into portable, concealable cryptocurrency.  Bhai hired an individual named Di Hao Zhang, arranged for him to stay at the Hampton Inn owned by the family, and wired at least approximately $4.9 million to him from the *3537 account.  App'x at 732-33.  Mr. Zhang was knowledgeable of cryptocurrency transactions.  He used the funds Bhai transferred to him, less his $260,000 fee, to purchase Bitcoin, place it on a "cold storage" wallet, and return it to the Bhais.

## III.  ARGUMENT

The additional facts and circumstances outlined above reinforce Benefit Street's arguments made in its Objection.  The maximum sentence permitted under the Plea Agreement fails to recognize Bhai's long—and ongoing—pattern of fraudulent conduct, including fraud against individuals, financial institutions, and the government (and by extension, every American taxpayer), as well as his persistent obstructionism in the face of Benefit Street's legitimate investigation in the Bankruptcy Case.  Further, Bhai's refusal to pay the balance of his restitution obligation under the Asset Preservation Agreement, notwithstanding the financial resources available to him, demonstrates that the Plea Agreement is inadequate under Section 3553(a) in light of Bhai's ongoing conduct.  Indeed, it appears only to have incentivized him to welch on his agreed restitution obligations, likely indefinitely.

The Court should reject the Plea Agreement as insufficient under the combined sentencing factors of Section 3553(a). At a minimum, Bhai and his family's prior fraud included their scheme against the Alcocers, using similar methods as their fraud against Benefit Street. Mr. Alcocer, it is worth noting, was a contractor hired by the Bhais to do maintenance work. Rather than pay him what he was owed for his work, Bhai and his parents convinced him to buy their convenience store at an inflated price. As a result, the Alcocers were forced to file bankruptcy and the Bhais paid $575,000 to settle the bankruptcy trustee's fraud claims against them.

It is also clear that Bhai defrauded Revere and, further, that he almost certainly committed PPP loan fraud exceeding $1 million. Bhai's recidivist conduct demonstrates that he harbored even grander fraudulent schemes after his Loan fraud, reflected in both his efforts to obtain a second, larger loan from Benefit Street and the existence of the false IBF slide deck and website, intended to defraud investors.

With respect to Benefit Street, Bhai and his family fraudulently transferred millions of dollars of their ill-gotten Loan proceeds and attempted to conceal millions more by converting them to cryptocurrency, all in a successful effort to place significant portions of those funds out of Benefit Street's and the government's reach. Further, Bhai continued his original fraud against Benefit Street through his contumacious behavior during the Bankruptcy Case. Among other things, Bhai's use of the Fifth Amendment to shield himself, his family, and his ill-gotten assets went far beyond any reasonable, good faith assertion of his constitutional rights or reasonable belief that truthful answers could incriminate him.[4] Further, it is entirely inconsistent

---

[4] Bhai asserted his Fifth Amendment privilege to skirt testifying regarding the very conduct he pled guilty to – in other words, conduct for which he agreed to *waive* his Fifth Amendment privilege under the Plea Agreement.

with any notion of remorse or cooperation that would justify the leniency Bhai seeks by asking this Court to approve the Plea Agreement.

Finally, Bhai has refused to meet restitution obligations to which he plainly agreed. In addition to committing to pay $20 million within 14 days of signing the Asset Preservation Agreement—a promise which he clearly had no intention of keeping—Bhai's financial history as revealed through discovery in the Bankruptcy Case demonstrates the ability to pay the remaining restitution, but he just refuses to do so.[5] This is consistent with Bhai and his family's reticence in the bankruptcy litigation to provide any useful information about the family's past and current finances.

Under Section 3553(a)(1), Bhai's sentence should reflect "the nature and circumstances of the offense and history and characteristics of the defendant." Further, Section 3553(a)(2) requires that the sentence reflect the seriousness of Bhai's offense, promote respect for the law, provide just punishment and adequate deterrence, and protect the public from his future criminal conduct. Finally, Section 3553(a)(7) requires a sentence that considers the need for Bhai to make restitution to Benefit Street.

These statutory considerations militate against the Court's acceptance of the Plea Agreement here. Bhai's history and characteristics are that of a habitual and unrepentant fraudster with no indication of stopping, even after Benefit Street uncovered the Loan fraud and entry of his pending guilty plea. Remarkably, Bhai even committed fraud with respect to the Asset Preservation Agreement that was part of that plea and presented to this Court. Out of that

---

[5] Pursuant to the Asset Purchase Agreement, Bhai turned over approximately 212.846132 Bitcoin with a then-current market value of approximately $5.5 million to the United States Marshal's Service to be liquidated towards payment of his $20 million obligation under the agreement. Benefit Street has been told by the Bhais that this is the same Bitcoin Bhai purchased using the Loan proceeds he misappropriated from Benefit Street. Benefit Street further understands that Bhai has made no further payments under the Asset Preservation Agreement.

fraud, he acquired more than $1.25 million in jewelry, hundreds of thousands of dollars of luxury vehicles, and substantial financial assets, all of which remain unaccounted for to this day.

Even after entering into the Plea Agreement, Bhai, instead of cooperating with Benefit Street's discovery in the Bankruptcy Case, disobeyed his obligations and bankruptcy court orders until he was held in civil contempt and used the Fifth Amendment (along with his parents' disingenuous claimed ignorance) to shield the family's finances from meaningful scrutiny. Bhai even promised to pay $20 million to the government, a promise that he never intends to perform, in an apparent effort to convince the Court that he will "make right" his confessed crimes. He never will.

Based on all of the above, the Plea Agreement is inappropriate in light of Bhai's history, characteristics, and continued fraudulent conduct. The agreed imprisonment cap of 120 months is plainly inadequate to satisfy the sentencing purposes of Section 3553(a) or to provide any meaningful deterrent effect or protect the public from the future crimes Bhai is likely to commit. It further disincentivizes Bhai to ever make good on his discovery obligations, even as he has either refused to pay *any* of the approximately $14.5 million balance owing under the Asset Preservation Agreement while having the resources to do so, or has refused to account for the disposition of the resources he previously had that would have been sufficient to fully fund the obligation.

## IV.   CONCLUSION

The Plea Agreement, with its 120-month maximum sentence, should be rejected after application of the Section 3553(a) factors. Its acceptance would not represent just punishment, provide a meaningful deterrent effect or protect the public against future crimes, or otherwise

satisfy the sentencing purposes set forth in the statute. Benefit Street respectfully requests that the Court reject the Plea Agreement.

Respectfully submitted,

By: */s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Samuel M. Deau
State Bar No. 24135506
sdeau@vedderprice.com
**VEDDER PRICE, P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790

Lee B. Hart
Georgia Bar No. 502311
lee.hart@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
201 17th Street, Suite 1700
Atlanta, Georgia 30363
404.322.6349

**COUNSEL FOR VICTIMS
BENEFIT STREET PARTNERS
REALTY OPERATING PARTNERSHIP, L.P.
AND BSP OF FINANCE, LLC**

## CERTIFICATE OF SERVICE

I certify that on this date, a true and correct copy of the foregoing document was forwarded to all known counsel of record in this cause *via* the Court's CM/ECF system.

*/s/ Jeff Ansley*
Jeffrey J. Ansley